A. W. McLaughlin and Company, Appellant, *v.* The Southern Hotel Company, Respondent.

First Department, July 3, 1919.

**Principal and agent — action for commissions under contract to secure loan — revocation of authority — subsequent borrowing from same lender — dismissal of complaint — evidence.**

In an action to recover commissions, claimed to have been earned by the plaintiff in interesting one S. to loan money to the defendant upon a building and loan mortgage, it appeared that the plaintiff entered into negotiations with S. for the purpose of securing the loan and arranged meetings with the defendant which it avoided, and before any direct negotiations were effected said defendant revoked its authority to the plaintiff. Thereafter defendant had negotiations with S. through one F., which finally resulted in the loan being made upon a bond and mortgage under the so-called Straus system. The plaintiff sought to recover upon the ground that S. was interested in the loan by them and that said loan was one contemplated by the agreement. Provisions of the agreement and evidence examined, and

*Held*, that a judgment dismissing the complaint should be reversed and a new trial granted.

Appeal by the plaintiff, A. W. McLaughlin and Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 24th day of September, 1918, upon a dismissal of the complaint by direction of the court at the close of the case.

*Alexander Pfeiffer* of counsel [*Lind & Pfeiffer*, attorneys], for the appellant.

*Stephen P. Anderton* of counsel [*S. Stanwood Menken* and *Edward K. Hanlon* with him on the brief; *Beekman, Menken & Griscom*, attorneys], for the respondent.

Smith, J.:

The action was brought to recover commissions claimed to have been earned by the plaintiff in interesting S. W. Straus & Co. to loan money to the defendant upon a building and loan mortgage. The case was first submitted to the jury upon two questions, *first*, whether the plaintiff interested Straus & Co. in the project to loan money, and *secondly*, whether the contract provided for such a loan as was finally

made by Straus & Co., that is, whether that kind of a loan was in contemplation of the parties to the contract. The jury disagreed. Thereafter, upon a reserved motion to dismiss the complaint, the court directed a dismissal, and it is from the judgment entered upon this direction that the plaintiff has appealed.

This contract is contained in what is called an authorization executed upon June 3, 1916, by the defendant through its treasurer, A. J. Fink. The contract purported to authorize the plaintiff " to negotiate for the undersigned, hereinafter designated as Borrower, a building and permanent loan secured by first mortgage on Borrower's property located in the City of Baltimore * * * at north east corner of Light and German Streets."

The 2d paragraph provided that the borrower should pay to plaintiff a commission of one per cent " of the amount of any loan Borrower finally agrees to accept from any lender whom, while this authorization is in force, McLaughlin & Co., interest in the matter or introduce to the Borrower."

The authorization then specifies the amount of loan desired as $700,000 at six and five per cent for fifteen years, and the 7th provision states: " This authorization is exclusive, but may be cancelled by Borrower giving three business days' written notice after June 19th, 1916, to McLaughlin & Co., at their office, 128 Broadway, New York." At the same time there was executed an application for a loan which was called a building and permanent loan. The terms of this application are apparently immaterial, except that the defendant stated in answer to the question: " Has any application for loan on this property been made elsewhere and to whom?" " No."

On August seventeenth the defendant through its attorney gave notice of the cancellation of the exclusive authority, as provided in the contract of June third, and thereafter, in September, through another broker, the defendant borrowed of S. W. Straus & Co. about $700,000 upon a building and permanent loan. This building and permanent loan was arranged by the issue of bonds to be sold separately, the payment of which was to be secured by a trust mortgage upon the property. It seems that that was the system generally

if not always adopted by S. W. Straus & Co. It is the claim of the defendant that its contract or authorization of June third with the plaintiff was for the securing of what is called a straight mortgage loan, which has been described to be for the giving of a single bond to the lender, secured by a mortgage to the lender and not by the giving of numerous smaller bonds to be distributed around the country to be secured by a trust mortgage. The testimony of the defendant's treasurer is to the effect that this was specifically stated to the plaintiff at the time of the signing of the authorization or contract, and the reason was stated to the effect that as it was selling preferred stock, it would interfere with the sale of that preferred stock if there were upon the market these bonds secured by this trust mortgage.

After the signing of this authorization or contract of June third, the plaintiff sought to borrow this money of several lenders. Among them the plaintiff applied to S. W. Straus & Co., and Straus & Co. evidently became interested, or were interested, in the venture. The testimony of the defendant is to the effect that the plaintiff assured the defendant that it would be able to secure a straight building loan from Straus & Co., instead of the one customarily used by them with numerous bonds and with a trust mortgage. There were some endeavors to get the defendant's officers to meet Straus & Co., and there were some arrangements, whereby meeting places were assigned, but the defendant delayed and avoided those meetings, so that prior to the time that the authorization was revoked, the defendant had not, in fact, had personal interviews with Straus & Co. After the exclusive authority was revoked, the defendant, through one Fechtig, had negotiations with Straus & Co. which finally were consummated in the loan being made under the Straus system of numerous bonds with a trust mortgage. The plaintiff seeks here to recover upon the ground that Straus & Co. were interested in the loan by them and that this loan was one contemplated by the agreement.

The claim is made that this exclusive authorization was revoked and the profits turned over to Fechtig, who completed the negotiations with Straus & Co. so as to divert the commissions from the plaintiff to Fechtig, who has, in fact,

been paid this commission. It may well be argued that prior to the time when the plaintiff came into the matter at all, Fechtig himself, in behalf of the defendant, had presented the matter to Straus & Co., asking for a straight building and permanent loan, and that he had been unable to get assurances of anything other than a building loan upon this Straus system, and it was because of Fechtig's failure to get anything else from Straus that the matter was turned over to the plaintiff with the distinct understanding that this was a straight building and permanent loan that was desired, instead of one upon the Straus system. It is claimed that Straus was, therefore, made interested in the project through Fechtig sometime before McLaughlin came into the matter at all, so that the plaintiff did not interest Straus & Co. in the project. There is evidence, however, to the effect that when the matter was first presented by the plaintiff to Straus & Co., Straus referred to the fact of the matter having been brought to their attention before and that he considered it then as a wild promotion scheme, so that I think there was evidence to go to the jury upon the question as to whether Straus & Co. were interested in this project by Fechtig before the contract with the plaintiff, or whether they became interested through the plaintiff's interposition in behalf of the defendant. Under the evidence that could not be ruled as matter of law and should have been submitted as it was in fact, in the first instance, to the jury.

By the opinion of the trial court it appears that the complaint was finally dismissed upon the ground that the authority to the plaintiff was to negotiate a loan upon a straight bond and mortgage, so called, and not upon a bond and mortgage under the Straus system. If this be an issue in the case, there was clearly enough to go to the jury upon the question of fact. Upon a critical examination of the contract made, however, I am satisfied that the defendant is not in a position to make the claim that the plaintiff was not authorized to interest Straus & Co. in a loan upon the Straus system. If we assume for the argument that the defendant intended so to restrict the authority of the plaintiff, that intention was not embodied in the written contract. The written contract provided for the procurement of a permanent building and loan agreement.

That could be obtained either under the Straus system or under the so-called straight bond and mortgage, and it was, in fact, later procured under the Straus system. The defendant's agreement was to pay the plaintiff its commission of one per cent " of the amount of *any loan* Borrower finally agrees to accept from *any lender* whom, while this authorization is in force, McLaughlin & Co. interest in the matter or introduce to the borrower." There certainly was no limitation in this agreement to a loan upon a straight bond and mortgage. On the contrary, the defendant agreed to pay the commission upon *any loan* which the defendant finally accepted from *any lender* whom the plaintiff might interest in the making of the loan.

All conversations prior to the making of an agreement are deemed to have been waived which are not embodied in the written agreement. Under this agreement as it was expressed in the writing, proof that by oral contract made at the time the plaintiff was limited to a loan upon a so-called straight bond and mortgage would seem to me to vary the terms of the written contract and, therefore, to be inadmissible. The defendant has not asked that the contract be reformed, and, as expressed, it covered any permanent building and loan agreement which the plaintiff might secure or might interest a borrower to make, so that the trial judge was not authorized to dismiss the complaint upon the ground that an oral agreement was made at the time limiting the agreement thus expressed. The only question which was properly submitted to the jury was the question as to whether the defendant did not in fact interest Straus & Co. to make this loan. The fact that the defendant, through Fechtig, had prior to this time negotiated with Straus & Co. is competent as bearing upon this question of fact, but it is not determinative of the fact.

Upon the questions submitted the jury disagreed, and it follows that the judgment must be reversed and a new trial granted, with costs to the appellant to abide the event.

DOWLING, J., concurred; CLARKE, P. J., and PAGE, J., concurred in result.

Judgment reversed and new trial ordered, with costs to appellant to abide event.